USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/3/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CLARA ALVAREZ on behalf of the infant
J.A.R.A.,
                 Plaintiff,

   -against-

CAROLYN W. COLVIN, acting Commissioner
of Social Security.

                Defendants.
------------------------------------------------------------X

14-CV-399 (NSR)(JCM)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Pending before the Court is a Report and Recommendation ("R&R") dated March 8, 2016, issued by the Honorable Judith M. McCarthy ("MJ McCarthy"), Magistrate Judge of the S.D.N.Y., pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). (ECF No. 29). Plaintiff, Clara Alvarez ("Plaintiff" or "Alvarez"), on behalf of her infant daughter J.A.R.A. ("JARA"), filed an objection to the R&R on the basis that MJ McCarthy's factual determinations were not support by substantial evidence and misapplied the law. For the following reasons, the Court conducts *de novo* review of the record, and following a review of the record, the Court DENIES Defendant's motion and GRANT'S Plaintiff's motion to the extent of remanding the matter back to the Social Security Administration for further proceeding.

## BACKGROUND[1]

In September 2008, Plaintiff filed an application with the Social Security Administration ("SSA") seeking disability insurance benefits on behalf of her infant daughter, JARA. Plaintiff alleged JARA, born February 12, 2002, suffered from "speech and language delays and a learning disorder." (R&R at 2.) In December 2008, the SSA denied Plaintiff's application. Plaintiff timely appealed the

---

[1] Facts are taken from Plaintiff's complaint and the R&R, unless otherwise noted.

SSA's denial.

In May 2010, a hearing was held before Administrative Law Judge Michael Friedman ("ALJ Friedman"). Upon completion of the hearing, ALJ Friedman upheld the denial of benefits. In July 2010, Plaintiff requested review of the ALJ's decision to the SSA's Appeals Council. The Appeal's Council remanded the matter back to ALJ Friedman for further proceedings.

Plaintiff's hearing was re-opened and additional evidence in further support of Plaintiff's claims was proffered . In a decision issued on September 27, 2012, ALJ Friedman once again denied Plaintiff's application for benefits. In January 2013, following a demand for a copy of the hearing minutes, Plaintiff timely appealed the denial of benefits with the SSA's Appeals Council. On November 20, 2013, the Appeals Council denied Plaintiff's application thereby making the determination the final decision of the SSA Commissioner.

Plaintiff commenced the instant action seeking to challenge the final determination of the SSA which denied her application for disability benefits on behalf of JARA. Plaintiff alleges JARA is disabled and that said disability warrants the granting of benefits. Plaintiff asserts, *inter alia*, the SSA's determinations is not supported by the evidence and is otherwise contrary to law.[2] The matter was referred to MJ McCarthy, pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), for an R&R.

**STANDARD OF REVIEW**

A magistrate judge may "hear a pretrial matter [that is] dispositive of a claim or defense" if so designated by a district court. Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. §636(b)(1). In such a case, the magistrate judge "must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); accord 28 U.S.C. §636(b)(1). Where a magistrate judge issues a report and recommendation,

---

[2]The operative complaint is the Amended Complaint, dated January 31, 2014.

> [w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings or recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. §636(b); accord Fed R. Civ. P. 72(b)(2), (3). However, a district court 'may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003) (quoting La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000)).

To the extent a petition makes specific objections to an R&R, those parts must be reviewed *de novo*. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). In a *de novo* review, a district court must consider the "[r]eport, the record, applicable legal authorities, along with Plaintiff's and Defendant's objections and replies." *Diaz v. Girdich*, No. 04-cv-5061, 2007 WL 187677, at *2 (S.D.N.Y. Jan. 23, 2007) (internal quotation marks omitted). But to the extent "a petition makes only general and conclusory objections . . . or simply reiterates the original arguments, the district court will review the report and recommendations strictly for clear error." *Harris v. Burge*, No. 04-cv-5066, 2008 WL 772568, at *18 (S.D.N.Y. Mar. 25, 2008). The distinction turns on whether a petitioner's claims are "clearly aimed at particular findings in the magistrate's proposal" or are a means to take a "'second bite at the apple' by simply re-litigating a prior argument." *Singleton v. Davis*, No. 03-cv-1446, at 2007 WL 152136, at *2 (S.D.N.Y. Jan. 18, 2007) (citation omitted).

Generally, when written objections to a magistrate's report and recommendation are timely filed, the district court judge will make a *de novo* review "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "However, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition will not suffice to invoke *de novo* review of the magistrate's recommendations." *Vega v. Artuz*, No. 97-cv-3775LTSJCF, 2002 WL 31174466, at *1

(S.D.N.Y. Sept. 30, 2002) (citing *Vargas v. Keane*, No. 93-cv-7852 (MBM), 1994 WL 693885 (S.D.N.Y. Dec. 12, 1994); *Klawitter v. Chater*, No. 93-cv-0054E, 1995 WL 643367 at *1 (W.D.N. Y. Oct. 18, 1995); *Murphy v. Grabo*, No. 94-cv-1684 (RSP), 1998 WL 166840 at *1 (N.D.N.Y. Apr.9, 1998)). General or conclusory objections are also reviewed strictly for clear error. See *Harris v. Burger*, No. 04-cv-5066 (HB)(FM), 2008 WL 772568 at *6. (S.D.N.Y.).

### *DE NOVO* REVIEW

A district court's *de novo* review of a final decision by the SSA Commissioner is limited to whether the correct legal standard has been applied and whether the decision is supported by substantial evidence. See, *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir.2008); *Acierno v. Barnhart*, 475 F.3d 77, 80–81 (2d Cir.) (citing *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir.2004)) (additional citation omitted), cert. denied, 551 U.S. 1132 (2007); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999). Such review does not include a *de novo* determination as to whether the plaintiff is disabled as defined by statute. *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996) (internal quotation marks and citation omitted). Nor must a district court substitute its interpretation of the administrative record where there exists substantial evidence in support of the hearing officer's determination . *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

"[Substantial evidence]" is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401(1971) quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). It is for the SSA, not the reviewing court, to weigh the conflicting evidence in the record. See *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir.1996) (an "appeals court does not reweigh the evidence in social security cases")."To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d

at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983)).

**TREATING PHYSICIAN RULE**

Generally, in social security disability proceedings, the hearing officer gives deference to a claimant's treating physician's medical opinion of. 20 C.F.R. § 404.1527(d)(2); see also *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir.1993) (upholding the validity of regulations codifying the treating physician rule). A treating physician's opinion is given controlling weight provided it is well supported by substantial evidence, such as other medical findings, and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); see also *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) When weighing the medical evidence, the hearing officer cannot arbitrarily substitute his or her own judgment but must accord due deference to existing competent medical opinion. See, *Rosa v. Callahan*, 168 F.3d 72 (2d Cir. 1999).

In such cases where the administrative record may adequately support contrary findings on relevant issues, the hearing officer's factual determinations are to be given conclusive effect provided they are supported by substantial evidence. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir.2010) (citation and internal quotation marks omitted). Similarly, a reviewing court must defer and uphold the Commissioner's final decision, grounded in substantial evidence, even if the record may support a contrary determination. See, *Johnson v. Astrue*, 563 F.Supp.2d 444, 454 (S.D.N.Y.2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.")). Accordingly, "[t]he role of the reviewing court is limited and substantial deference is to be afforded the Commissioner's decision." *Johnson v. Astrue*, 563 F.Supp.2d at 454 (citations and internal quotation marks omitted). However, "where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987).

**ALJ FRIEDMAN'S DETERMINATION**

When analyzing the issue of disability for persons under the age of 18, the hearing officer must utilizes a three-step sequential evaluation procedure. 20 C.F.R. § 416.924(a). The hearing officer must first determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). At step two, if the child is not engaged in substantial gainful activity, the hearing officer must determine whether the child has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924©. And lastly, the hearing officer must determine whether the child's impairment or combination of impairments meets or is medically or functionally equal to one of the listings, and otherwise satisfies the duration requirement. 20 C.F.R. § 416.924(d).

Upon the conclusion of the hearing , ALJ Friedman made the following findings of fact and legal conclusions which were adopted by the SSA.[3] Plaintiff, born February 12, 2002, was a pre-schooler on September 22, 2008, the date her application was filed, and continued to be a school-aged child during the pendency of the proceeding. 20 CFR 416.926a(g)(2). Plaintiff did not engage in substantial gainful activity since September 22, 2008. Plaintiff was deemed to have severe impairments such as Attention Deficit Hyperactivity Disorder ("ADHD"), learning delays, speech and language delays, and asthma. Plaintiff's medically determinable impairments resulted in more than minimal limitations in her ability to perform basic work functions such that they constitute severe impairments within the meaning of the Social Security Act and regulations. Plaintiff's impairment or combination of impairments, however, did not meet or medically equal the severity of the impairments contained in 20 CFR Part 404, Subp. P, Appendix 1.(20CFR 416.925, 416.925 and 416.926). Plaintiff's impairment or combination of

---

[3]ELA Friedman's findings of fact and legal conclusions are taken from SSA's Decision, dated September 27, 2012

impairments did not functionally equal the severity of the impairments listed. (20CFR 416.924(d) and 416.926a).

In reaching its factual determinations, ALJ Friedman noted that he considered all of the relevant evidence adduced at the hearing, which included objective medical evidence, evidence from non-medical sources, such as school teachers, family members, friends, care givers, and other evidence which referenced how the child functioned in all settings. ALJ Friedman noted he evaluated the whole child and compared her to other child of similar age who did not have impairments. When evaluating Plaintiff's limitations, he considered the type, extent and frequency of help JARA needed to function. Of significance to Plaintiff's claims, ALF Friedman noted in determining the "degree of limitation of the six functional equivalence domains, he considered all symptoms, the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 416.929, SSRs96-4p, and 96-7p.

In addressing Plaintiff's claims of speech and language delays, ALJ Fried commented that Plaintiff's intellectual and psychological testing indicate her intelligibility was good (Exhibit 1E,12). ALJ Fried also referenced that one of her teachers indicated that claimant's speech could 'almost always' be understood, both when the topic of conversation was known and when the topic was unknown (Exhibit 6E,6). Other testing in the record indicated claimant's speech was intelligible, claimant was able to participate in classroom activities, and claimant's individualized education plan ("IEP") noted that while claimant does have articulation difficulties, she is able to participate in classroom discussions (Exhibit 3F, 5 and 8 and Exhibit 4F,3).

**JARA'S MEDICAL HISTORY**

In 2007, JARA was evaluated by numerous physicians.[4] These physicians made similar conclusions observing that JARA showed some difficulty attending to tasks presented and had a short attention span. During this time, JARA's treating clinician and social worker, Fran Castellano Ross, L.M.S.W. ("Social Worker Ross"), at the Union Settlement Association Johnson Counseling Center ("USAJCC"), provided a psychological assessment in March 2011 wherein "JARA had been diagnosed with ADHD at the age of 6-7 and her teachers complained that they had to continually remind her to stay on task." (R&R at 8-9.) JARA's treating physician, Julia Najara, M.D. ("Dr. Najara"), at USAJCC, dating from April 28, 2011 to June 6, 2012 wrote in a letter dated August 18, 2011 that JARA had been in treatment at the USAJCC since December 2, 2010, "and had been diagnosed with disruptive disorder, ADHD, learning disorder, and a phonological disorder." (R&R at 9.) Dr. Najara prescribed JARA Concerta, an ADHD medication and Benadryl to combat sleep issues and remarked that JARA "was doing well with the medication." (R&R at 10.) Shortly after, Dr. Najara replaced JARA's Concerta prescription with Metadate CD due to insurance coverage issues. Plaintiff reported no difficulties with Metadate CD and that JARA was "doing well." (R&R at 10.) Dr. Najara described JARA as stable and "that the goals set for decreasing her tantrums had been achieved. Id. During this relevant time period, JARA's IEP for 2011-2012 indicated JARA had "difficulty focusing on tasks in school" and was "aware of her limitations and often times [would] stop working stating that the work [was] too hard for her." (R&R at 10.) The following year, JARA's IEP for 2012-2013 indicated that "she [JARA] had shown improvement in speech and language therapy but that she continued to have

---

[4] Physicians who evaluated JARA include Michael Russell, Ph.D., a Bilingual Licensed Psychologist at Community Educational Services, who evaluated JARA on February 9, 2007; Susan S. Perkins, a Bilingual Speech Therapist, who evaluated JARA on February 9, 2007; Carmen A. Rosario, MS, a Bilingual Educational Evaluator at Community Educational Services, who evaluated JARA on February 23, 2007 and Iris M. Lugo-Becker, L.C.S.W., who observed JARA in her nursery school classroom and completed a pre-school interview on June 13, 2007. (R&R at 4-8.)

difficulty focusing on tasks." (R&R at 11.) The IEP recommended that JARA be in a 12:1:1 special class with speech language therapy, counseling and English Language Learners services.

On June 14, 2012, Dr. Najara and Social Worker Ross completed a Childhood Disability Determination Analysis, which stated they had been JARA's therapist and psychiatrist for over a year, diagnosed her with disruptive behavior, ADHD receptive and expressive language disorder, and learning disabilities in reading, writing and math. Furthermore, they opined "that JARA had marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself." (R&R at 11.) The records noted that JARA had been prescribed Benadryl for sleep issues and Metadate CD for ADHD, and that "she needed repeated prompting, reminders, encouragement, frequent breaks, small group instruction, simplified instruction, and adaptive strategies to complete tasks and manage her frustrations." (R&R at 12.) On June 18, 2012, JARA's teacher, Richard Dinkus, completed a School Activities Questionnaire wherein he observed that JARA, who was in fourth grade at the time, functioned at a second/third grade level. In addition Mr. Dinkus remarked that JARA's functioning was lower than the other students in her class in the areas of "attention span, and concentration, ability to work independently of teacher supervision, ability to understand and complete assignments on time, ability to respond to changes of routine, and ability to progress in learning the skills involved in reading, writing and mathematics." (R&R at12.)

While JARA's disability benefits application was pending, the SSA required JARA to visit two consulting physicians/specialists, Mindy Singer and Dr. Michael Alexander. In addition to their evaluations, they provided a child disability evaluation taken of JARA in 2008. Ms. Singer evaluation, taken in November 2008, found that "JARA had mild receptive language delays and severe expressive language delays. (R&R at 13.) In addition, she found that "JARA presented fair skills in the area of pragmatics and good articulation skills." (R&R at 13.)

Dr. Alexander, who also examined JARA in November 2008, "estimated that [JARA's] cognitive functioning and general fund of knowledge were somewhat below average and limited." (R&R at 14). In regard to JARA's attention and concentration, Dr. Alexander noted that they were intact and age appropriate. Dr. Alexander "diagnosed JARA with ADHD, predominately inattentive type, and a learning disorder, not otherwise specified." (R&R at 14.) The Childhood Disability Evaluation, performed and completed by Dr. J. Randall, Pediatrics, and Dr. J. Weir, Speech Language Pathology, "indicated that JARA had a speech delay and a learning disability, but that these impairments did not meet or medically equal impairment in the listing of impairments." (R&R at 14.) In addition, they found that "JARA had a marked limitation in acquiring and using information, but a less than marked limitation in attending and completing tasks and in interacting and relating with others." (R&R at 14.)

**ALJ'S DECISION**

During the hearing medical expert Dr. Matilda Brust ("Dr. Brust") testified and noted that there were limited medical notes in the record regarding JARA's ADHD treatment. Dr. Brust confirmed that she had not seen the medical records from the USAJCC. The ALJ took a brief recess to allow Dr. Brust to review the USAJCC records. When the hearing resumed, "Dr. Brust stated that her conclusions were more or less unchanged regarding JARA not meeting the Listed Impairments for cognitive delays or language impairments. Dr. Brust also stated in regard to the Listed Impairment for ADHD, she now had sufficient data to conclude that JARA had mild ADHD brought under control with medication." (R&R at 15.) In addition to Dr. Brust, both Plaintiff and JARA testified. Plaintiff testified using a Spanish translator and stated that "her daughter had learning disabilities that primarily affected her reading and writing and that she was taking medication for asthma and to help her concentrate." (R&R at 14.) When Plaintiff was asked if JARA's ADHD medication was helping, Plaintiff reported "sometimes" and

noted that "JARA also saw a therapist outside of school once a week, which was helping "a little bit." (R&R at 15.)

ALJ Friedman applied the three-step evaluation process for determining disability in a child; first, finding that JARA had not engaged in substantial gainful activity since September 22, 2008 (the application date); second, determining that JARA had the ADHD, learning delays, speech and language delays, and asthma; and lastly, holding that JARA did not have an impairment that met, medically equaled, or functionally equaled the Listed Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix I. In affirming the Commissioner's decision that JARA was not disabled and should therefore be denied benefits, the "ALJ gave Dr. Brust's conclusions significant weight given her familiarity with the requirements of the Act and her opportunity to interact with the claimant." (R&R at 16.) Similarly, the ALJ gave Dr. Singer and Dr. Alexander's conclusions significant weight "as they were consistent with the evidence of the record" and because "Dr. Alexander had a chance to interact with the claimant."[5] (R&R at 16.) The ALJ noted that he gave Dr. Najara's opinion little weight because "it was not supported by her narrative or the evidence of record" and that" it was inconsistent with the other opinions on file." (R&R at 17.) Furthermore, the ALJ did not find Plaintiff's reports on JARA's limitations to be credible, given the conflicting evidence in the record.

Plaintiff once more requested review and her request was denied on November 20, 2013. Thereafter, Plaintiff appealed the SSA's decision by filing a report and recommendation action, contending that "the ALJ's decision was not supported by substantial evidence in the record and was based on errors of the law." (R&R at 2.) Judge McCarthy issued the R&R recommending that Plaintiff's motion be denied and Commissioner's cross motion for judgment on the pleadings be granted. Plaintiff filed objections to the R&R, and Defendant filed a response.

---

[5] ALJ Friedman did not mention that Dr. Alexander diagnosed JARA with ADHD. (R&R at 17.)

# DISCUSSION

Plaintiff raises three main objections in moving papers in opposing the R&R ("Plaintiff's Objection"); (1) "[t]here was no substantial evidence supporting the ALJ's determination that JARA's ADHD impairment was brought under control with medication," (2) "[t]he Magistrate Judge erred in concluding the ALJ properly applied the treating physician rule" and (3) "[t]he Magistrate Judge erred in concluding that the ALJ could not adopt wholesale Dr. Brust's conclusion on the ultimate determination of disability." (Pl.'s Obj. Brief at I.)

Plaintiff's first objection contains two Parts. Plaintiff argues that the ALJ may not draw medical inferences and substitute his lay opinion for that of treating physician. (Pl.'s Objection Brief at 7-8.) Plaintiff asserts that the ALJ's actions are speculative because Dr. Najara's treatment notes do not state that JARA's condition is 'well controlled with medication,' yet the ALJ concludes that JARA's impairment is under control with medication. (Pl.'s Objection Brief at 10.) In addition, Plaintiff asserts that the "ALJ engaged in the logical fallacy of denying the antecedent. Specifically, he took a known proposition: that if JARA does not take medication (A) then she is inattentive and hyperactive (B), to improperly assume an unknown proposition that if she does take medication (not A), then she is attentive and not hyperactive (not B). This is a logical fallacy that also appears to have been adopted by the Magistrate Judge." (Pl.'s Objection Brief at 10.) Plaintiff asserts "[t]he ALJ had a duty to seek clarification to resolve perceived inconsistencies, conflicts or ambiguities within treating physician's reports." (Pl.'s Obj. Brief at 11.) Plaintiff further that the ALJ should have sought clarification and should have developed the administrative record to resolve issues of inconsistencies.

With respect to Plaintiff's second objection, Plaintiff states that the ALJ misapplied the treating physician rule by not using the proper factors.[6] (Pl.'s Obj. Brief at 13.) In addition, Plaintiff states that

---

[6] To discount the opinion of a treating physician, an ALJ must provide good reason, and in doing so, should consider six factors. 20 C.F.R. § 404.1527(c)(2)-(6). These factors include; (1) the length of the treatment relationships and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency with the record as a whole; (5) the specialization of the treating physician; and (6) other

the Magistrate Judge improperly concluded that the ALJ did not err by failing to "slavishly" recite the six factors in the case law just because the ALJ's reasoning and adherence to the regulation is clear. (Pl.'s Obj. Brief at 13.) Plaintiff also states that the R&R fails to take into account Dr. Brust's deficiency in understanding the requirements of the Social Security Act. (Pl.'s Obj. Brief at 19).

With respect to Plaintiff's third objection, Plaintiff states that the Magistrate Judge's approval of the ALJ decision was inappropriate because the Magistrate Judge determined that the consultant's "review of JARA's medical history may have been rushed." (Pl.'s Obj. Brief at 19.) In addition, Plaintiff states that the Magistrate Judge was wrong to rely on *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982), for the proposition that the ALJ need not set forth a specific rational for "his conclusion that a claimant's impairments do not meet the listed impairment. (Pl.'s Obj. Brief at 20.)

Although Defendants argue that Plaintiff's objections appear to be duplicative of the arguments made to the Magistrate Judge in the petition challenging the ALJ's determination, the Court begs to differ as it relates to Plaintiff's contention that the ALJ misapplied the Treating Physician Rule. As previously mentioned, a treating physician's opinion is given controlling weight provided it is well supported by substantial evidence, such as other medical findings, and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); see also *Halloran v. Barnhart*, 362 F.3d at 32. Generally, when an ALJ fails to accord controlling weight to the medical opinion of a treating physician, he must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to

---

factors that are brought to the attention of the Court, an ALJ must seek clarification from the treating physician to understand his or her diagnoses. *Halloran v. Barnhart*, 362 F.3d at 32. The Court notes that the ALJ's decision lacks such an analysis.

support or contradict the opinion. Id. The regulations further provide the Commissioner must give good reasons in [her] notice of determination or decision for the weight given to a claimant's treating doctor's opinion. Id.; accord 20 C.F.R. § 416.927(d)(2); see also *Schaal v. Apfel*, 134 F.3d at 503–504.

A review of the administrative indicates that JARA was first evaluated when she was four (4) years old. Dr. Michael Russell performed the Wechsler Preschool and Primary Scale of Intelligence Test ("WPPSI-III") wherein he noted that JARA's attention and task focus were variable and her non-cognitive problem-solving strategies on visual-motor items were fairly weak with regard to her ability to take time to think before beginning her task and rethink her work in progress." See Exh. 1F, Bilingual Psychological, dated February 9, 2007. At five (5) years of age, JARA was functioning at a 50% delay in auditory comprehension and expressive language. See Exh. 1F and 2F, Bilingual Speech and Language Eval., dated February 12, 2007. In a June 13, 2017 student progress report, JARA's teacher noted that JARA was deficient in her communication and socialization skills. She lacked basic knowledge of letter recognition, colors and was in need of speech and language services. On June 13, 2007, Dr. Ronna Rosen performed a Developmental Assessment of JARA and noted that she tested poor for cognitive and communication skills, average on social-emotional scale, and very poor on adaptive behavior. Following JARA's evaluation, on June 20, 2007, an Individual Educational Plan ("IEP") was implemented. The IEP noted JARA had significant speech and language delays.

In a November 26, 2018 Psychiatric Evaluation performed by Dr. Michael Alexander, Ph.D. ("Dr. Alexander"), JARA's intellectual and functioning was estimated to be below average and fund of information was "somewhat limited." JARA was found to have difficulty attending to task, following and understanding age appropriate directions and likely unable to complete many age appropriate task. Based on his examination, Dr. Alexander diagnosed JARA with ADHD, predominantly inattention type. He also determined that JARA suffered from a learning disability, not otherwise specified. He deemed JARA's prognosis as fair.

A November 20, 2009 IEP indicated that JARA had a speech and language disability requiring counseling and special classes with speech and language therapy. She had difficulty reading , decoding words, and possessed immature writing skills. Although a second grader, her writing and reading and comprehension skills were assessed at the beginning of the first grade. JARA was deemed not ready to meet the demands of a general education class room due to it "lacking sufficient structure to address the child's communication and academic delays." A May 2011 IEP indicated that JARA has difficulties focusing on assigned task. Although a third grader, she possessed below grade word identification, reading and writing abilities, and math skills. The IEP indicated she would benefit from small group instructions and recommended speech and language therapy.

JARA was evaluated and began counseling at USAJCC in March 2011. Her psychological assessment, performed by Social Worker Ross, noted that JARA suffered from ADHD, was not on medication, lacked focused and concentration with assigned task. She opined that JARA's academic deficiencies were due to her ADHD. In April 2011, Dr. Najara performed a psychiatric and mental status evaluation of JARA. She noted that JARA was previously diagnosed with ADHD, purportedly receives speech therapy and fails to complete her assignments timely. Upon examination, Dr. Najara found JARA displayed poor articulation and vocabulary, and poor concentration. Her diagnosis include Disruptive Behavior Disorder, NOS, with ADHD to be ruled out. Dr. Najara also noted possible diagnosis such as Adjustment Disorder, Learning Disorder, Phonology Disorder, NOS, and mixed Receptive and Expressive Language Disorder. In a September 16, 2011 Psychiatric and Mental Status Examination, performed at the USAJCC, JARA exhibited a limited working vocabulary, poor syntax and considerable difficulties with both expressive and receptive language. The results of a Weschler Intelligence Scale for Children IV Test ("WISC-IV") indicates JARA had a very uneven intellectual development. There were indications that her ability to learn and process information, and use verbal information was very difficult for the child. Based upon the evaluation, JARA was viewed as a

borderline to low average student.

Although it is clear from the record that JARA was given stimulant medications for ADHD, initially Concerta, which was later replaced with Metadate, the Court was unable to find any indication to support the ALJ's determination that JARA suffers from "mild ADHD" which is being controlled with "medication." To the contrary, the school and medical records, show a long history of learning disabilities, inclusive of absent-mindedness, difficulty focusing, forgetfulness, lack of concentration on task, and hyperactive. The educational records also show a long history of learning and cognitive deficiencies resulting in JARA unable to read, write and perform basic math computations at grade level. The records show that JARA was routinely one to two years behind in most tested educational areas.

Dr. Najara, JARA's treating physician, diagnosed her with ADHD, Disruptive Behavior NOS, and a Learning Disorder. Out of hundreds of pages contained in the record, the ALJ relied on one line from Dr. Najara's May 21, 2012 treatment notes which states "Pt mother states pt doing well on med," to reach the conclusion that JARA's ADHD impairment was brought under control with medication." Though the ALJ also relied on Dr. Brust opinion, giving it significant weight. The record demonstrates that she did not review JARA's medical and school records. Though she was afforded an opportunity, mid-hearing, to review JARA's records, there a lack of substantial evidence to support his conclusion. Substantial evidence is defined as "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401. It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Id. Notably, Dr. Najar's treating notes and diagnosis of ADHD and Learning Disability, is consistent with the evaluation of Dr. Alexander as reflected in the November 28, 2008 psychiatric evaluation. Lastly, based upon a review of the administrative record, the Court is unable to decipher whether the ALJ, in determining to accord Dr. Najara assessment less weight, considered such factors as: (I) the frequency of examination and the

length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). Thus, it is the Court's determination that upon *de novo* review of the administrative record, the Court finds that the ALJ conclusion fails to be supported by substantial evidence and that he misapplied the treating physician rule.

CONCLUSION

For the reasons stated above, the Court does not adopt the findings and conclusions contained within the R &R, and upon de novo review the Court DENIES Defendant's motion for judgment on the pleadings, and GRANT'S Plaintiff's motion to the extent of remanding the case to the Social Security Administration for further consideration and proceedings consistent with this opinion. The Clerk of the Court is respectfully directed to terminate the motions at ECF No.s 17 and 21, and to close the case.

This constitutes the Court's Opinion and Order.

Dated: October 3, 2019
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge